UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| José Alberto Vizcarrondo, Joni T. Faris and the conjugal partnership formed between them,<br>Plaintiffs,<br><br>v.<br><br>Telecinco, Inc.; Josefina Ramírez de Arellano, her husband Jorge Soltero and the conjugal partnership formed by them ; Andrés Ramírez de Arellano Paredes ; and Paul Hopgood, his wife Jane Doe and the conyugal partnership formed by them ; Insurance Company A ; Insurance Company B ; and Insurance Company C.<br>Defendants. | Civil No.<br><br><br>Trial by jury demanded |

## VERIFIED COMPLAINT

NOW COMES PLAINTIFFS, JOSE ALBERTO VIZCARRONDO, his wife JONI T. FARIS and the conjugal partnership formed by them (hereinafter "Plaintiffs"), by and through the undersigned attorney, and respectfully alleges and prays as follows:

### I. NATURE OF ACTION

This is an action for specific compliance of the employment agreement between José Alberto Vizcarrondo ("Vizcarrondo") and his former employer Telecinco, Inc. (hereinafter "Telecinco") and for damages suffered by Plaintiffs caused by defendants' tortious conduct.

### II. PARTIES

1. Plaintiffs are citizens of the United States, married to each other and residents of

1

W. Penmarch Place, Sioux Falls, South Dakota, United States. Plaintiff, Vizcarrondo worked for Telecinco, Inc. for 13 years up until August 9, 2018 when he was constructively discharged.

2. Defendant Telecinco, Inc. is a corporation created and existing under the laws of the Commonwealth of Puerto Rico. Telecinco's corporate offices are located at 1519 Ponce de León Ave., First Bank Building, 15th Floor, Santurce, PR 00909.

3. Defendants Josefina Ramirez de Arellano ("JRA") and Jorge Soltero are natural persons citizens of the United States residents of the Commonwealth of Puerto Rico who, per plaintiffs' belief, are married to each other under the conjugal partnership regime, which is also included as a defendant. JRA is a stockholder, director and secretary of Telecinco.

4. Defendant Andrés Ramirez de Arellano ("ARAP") is a natural person citizen of the United States, resident of the Commonwealth of Puerto Rico. ARAP is director of Telecinco and, also, is interim president of the Telecinco.

5. Defendant Paul Hopgood ("Hopgood") and Jane Doe are natural persons citizen of the United States, residents of the Commonwealth of Puerto Rico, who per plaintiff's belief, are married to each other under the conjugal partnership regime, which is also included as a defendant. Hopgood is a director of Telecinco. Jane Doe is the fictitious name used to designate Hopgood's wife whose identity is unknown at this time.

6. Defendants Insurance Company A, Insurance Company B and Insurance Company C are insurance companies, designated with fictitious names because their identities are unknown at this time, who issued policies which provide coverage of the claims contained herein.

### III. JURISDICTION

7. Plaintiffs bring their complaint under federal diversity jurisdiction, 28 U.S.C. §1332, as the parties are completely diverse in citizenship and the amount of controversy exceeds $75,000.

## IV. STATEMENT OF FACTS

**Background**

8. Telecinco was founded by Mr. Vizcarrondo's grandfather Mr. Alfredo Ramirez de Arellano who was married to Mrs. Esther del Valle (the "Grandparents"). Between them they fathered three children: Gloria Ramirez de Arellano ("GRA"), Josefina Ramirez de Arellano ("JRA") and Alfred Ramirez de Arellano. Vizcarrondo is son to GRA.

9. During the first half of the 2000's Vizcarrondo worked as Head of Portfolio Management for ING Bank in Geneva, Switzerland. At his grandfather's request, Mr. Vizcarrondo moved his family to Puerto Rico and assumed the Vice-Presidency of Telecinco and its related corporate affiliates in the year 2005. A few years later, Vizcarrondo was named President.

10. On June 18, 2007, the Grandparents created several voting trusts as to their shareholdings in Telecinco and other entities, wherein Vizcarrondo's mother, GRA, was designated as trustee for a term of 10 years.

11. The designation of GRA as Trustee, coupled with Alfredo Ramirez de Arellano's designation of Vizcarrondo as his successor to lead Telecinco and other family companies, incensed JRA and prompted her to file multiple complains against GRA, Vizcarrondo and the Grandparents.

12. On August 2007, JRA filed a complaint wherein she alleged that the Grandparents

were being abused by GRA and Vizcarrondo and sought a protective order on their behalf. The complaint was dismissed.

13. On August 2007, JRA also filed a complaint against Plaintiffs and GRA requesting that the voting trust be declared null and void and sought damages against GRA and Vizcarrondo, his wife and the conjugal partnership formed between. JRA alleged, amongst other things, that they had allegedly manipulated the Grandparents, that the voting trust was executed under deceit ("dolo") and/or intimidation perpetrated by GRA and Vizcarrondo, and that the Grandparents' assets were being mishandled. After numerous amendments to the complaint, the complaint was also dismissed.

14. On October 2007, JRA filed another complaint. This time, JRA requested that the Grandparent be declared incompetent and that a legal guardian be assigned. In that case, the Public Attorney for Family Affairs ("Procuradora de Asuntos de Familia") requested its dismissal because, per her report, there was no factual basis for JRA's request and JRA wanted to use the complaint as a "fishing expedition" into the Grandparent's medical records.

15. On October 2007, JRA also filed with the Federal Communications Commission ("FCC") an opposition, in reconsideration, to an Application for Consent to Transfer Control of Telecinco, Inc.. JRA's petition before the FCC was also denied.

16. Mrs. Esther del Valle passed away on January 2010 and on April 2010 Mr. Alfredo Ramirez de Arellano, by agreement between the parties, was declared legally incompetent. A year later, on May 2011, Mr. Alfredo Ramírez de Arellano passed away.

17. On February 2011, Telecinco and Vizcarrondo entered into an Employment

Agreement (the "Employment Agreement"). Per the Employment Agreement, Vizcarrondo is entitled to a payment of $500,000 in the event Telecinco terminates the employment relationship without cause or if "Vizcarrondo can show that he terminated [the] Agreement for good cause", provided that Vizcarrondo has first provided Telecinco notice and time to correct the conduct which propitiated the termination of the employment relationship. Also, in either case, the Employment Agreement stipulates that Vizcarrondo shall also be entitled to a fee of 5% of the proceeds from the sale of Telecinco, substantially all its assets, or a sale amongst stockholders if such sale occurs within 18 months of the termination of the employment relationship.

18. As recognized by Telecinco's Board of Directors on numerous occasions, under Vizcarrondo's leadership, Telecinco thrived. Among other things, Telecinco grew from one local station limited to the western part of the island, to one of the largest television companies in Puerto Rico with seven stations and four channels. Revenues doubled during a time when the advertising market was shrinking, and the economy was in recession. Today Telecinco and its affiliated entities, are more diversified, have greater financial health and serve three times as many customers compared to the time Vizcarrondo took over as president.

19. On June 18, 2017 the Voting Trust expired.

**<u>Vizcarrondo's Job conditions after the Voting Trust expired</u>**

20. On September 1st, 2017, to extend an olive-branch to JRA, Vizcarrondo wrote her a letter in which he invited JRA to "leave the differences aside" and to "work together" for the good of Telecinco. In turn, JRA responded stating that she will not forgive him or his mother for the past, accused Vizcarrondo of acts that could construe dishonesty ("actos de dudosa

honestidad") and to have provided disinformation. Also, JRA asserted that Vizcarrondo's mother is the epitome of laziness ("epitome de la vagancia"), of having "interior demons", of mental health problems ("tostadera") and lack business sense. Finally, in a veiled threat JRA stated that there are people equally or more capable to run the Companies ("Hay otras personas igual o mejor capacitadas para dirigir [las] empresas"), that she was going to modify some things ("modificar algunas cosas") and that sooner or later she would be there ("tarde o temprano estaré allí").

21. Vizcarrondo responded to JRA by letter of November 17, 2017, where he cautioned that her behavior constitutes harassment and demanded that she cease her direct and indirect attacks towards him and his family.

22. On December 15, 2017, a Stockholder's meeting to elect the members of the board was held. Driven by JRA, the discussion became aggressive and disorganized. JRA and ARAP's mother[1] brought forth candidates that had not been vetted by the Board, brought their attorneys into the meeting, blocked GRA from nominating herself as director without an explanation and, in general, created an atmosphere of confusion and hostility. After the meeting, JRA admitted that it had all been pre-planned by her and ARAP's mother, Georgina Paredes. Triumphant, JRA expressed, referring to Vizcarrondo, that "they would keep him for now because they needed him".

23. Effective January 1st, 2018, JRA became a member of the Board of Directors of Telecinco (the "Board"). JRA, now with the help of ARAP and Hopgood (hereinafter JRA, ARAP and Hopgood shall be referred to as the "Individual Defendants"), in common accord, began a campaign to oust Vizcarrondo from Telecinco by humiliating and insulting him, undermining his

---

[1] ARAP's mother, Mrs. Gloria Paredes, acts as legal guardian for ARAP's father.

authority, taking away his functions, putting into question his honesty, by ordering staff around and hiring new law firms without consulting management, without considering proposals and without previous Board approval. Also, under false pretenses, without any reasonable basis and without prior Board approval, the Individual Defendants hired a Certified Public Accountant to do a forensic audit of Mr. Vizcarrondo's dealings with the Company going back ten years.

24. On several Board meetings, director and CPA Mr. Eduardo Gonzalez-Green ("Gonzalez-Green") and Vizcarrondo questioned the necessity, motives and objectives of the forensic audit ordered by the Individual Defendants with Telecinco's funds, but no reasonable explanation was provided. The Individual Defendants lied, stating that the hiring of the forensic accountants did not have a specific objective and that the reason for their hiring was to have them at the ready in the event a need arose for a consultation. The Board agreed that any assignment to be given to the auditors would require the Board's previous approval.

25. Due to the above, on May 18, 2018, as required by the Employment Agreement, Vizcarrondo gave the Board of Directors of Telecinco notice of the harassment and hostile work environment that he was being subjected to by JRA, ARA and Hopgood with the intent of forcing him out of his job, demanded that it cease immediately and that corrective measures be taken.

26. Telecinco never responded to Vizcarrondo's letter.

27. Nevertheless, on June 6, 2018, the Individual Defendants as "members of the Board of Directors of Telecinco, Inc." sent Vizcarrondo a letter denying that any harassment had taken place. However, in an apparent admission of wrongdoing by JRA, the Individual Defendants classified JRA's actions as "personal of family differences or conflicts".

28. To the best of Plaintiff's knowledge, Telecinco did not initiate an investigation into the facts alleged by Vizcarrondo, as required by the Employee Manual, nor did Telecinco take, or offer to take, any corrective action. To the contrary, Defendants' efforts to oust Vizcarrondo intensified.

29. On July 23, 2018, Vizcarrondo was removed as treasurer of Telecinco and substituted by ARAP. On that same date, the Board withdrew Vizcarrondo's authority to make electronic bank transfers. During Board Meetings, on and off the record, the Individual Defendants expressed their disdain for Vizcarrondo and his family and that they did not trust him.

30. JRA even admitted to CPA Gonzalez-Green that she had a strategy to deal with Vizcarrondo and it was to be little by little.

31. During July 2018, taking advantage of the fact that Vizcarrondo was traveling outside of Puerto Rico, ARAP visited the offices of Telecinco with the forensic accountant. During his visit, ARAP introduced the forensic auditor to Telecinco's staff, required Telecinco's employees' cooperation as to the forensic audit and that a space be provided within Telecinco's offices so that the forensic accountant could perform his investigation into Vizcarrondo.

32. Vizcarrondo objected ARAP's actions in as much, amongst other things, ARAP did not have the authority to give orders to staff, the Board had not authorized the assignment of any work to the auditors, there was no estimate of cost for the work to be performed, the Board had not authorized any budget for the audit and the Individual Defendants had failed to provide a justification for the audit.

33. On July 6, 2018, the only Director of the Corporation not involved in the

controversy, CPA Gonzalez-Green, recognizing the illegality of his fellow board members' actions, sent a communication to the Board questioning the motives and necessity of the forensic audit and classifying the investigation as an "expedition".

34. Defendants disregarded the objections of Vizcarrondo and CPA González-Green and proceeded to audit Vizcarrondo's dealings with Telecinco within the offices of Telecinco, during business hours, in view of Telecinco's employees.

35. The decision to introduce the forensic accountant to the employees and to hold the investigation into Vizcarrondo within Telecinco's offices, during working hours, was made by the Individual Defendants with the intent of causing Vizcarrondo harm, to damage his reputation, to put his honesty into question in front of Telecinco's employees, and to create a rift between Vizcarrondo and the employees of Telecinco.

36. Six days later, on July 12, 2018, CPA Gonzalez-Green critiqued the hiring of Mr. Carlos Díaz-Olivo as attorney for Telecinco in as much he had a clear conflict of interest. Mr. Díaz-Olivo had represented JRA in matters related to Telecinco and had even attended a stockholder's meeting on her behalf. On that same day, and just six days after CPA Gonzalez-Green classified the forensic audit as an "expedition", CPA Gonzalez-Green, was removed as director of Telecinco by JRA and ARAP's mother without an explanation or basis.

37. On July 19, 2018, with the control of Telecinco's Board, the Individual Defendants removed Telecinco's Secretary, who had served for several years and substituted her with JRA. Additionally, on July 25, 2018, the Board controlled by the Individual Defendants, in order to assert unfettered control over the forensic audit, decided to create and "audit committee" and

named ARAP, JRA and Hopgood as its members.

38. On August 7, 2018, without any explanation or justification, ARAP signed all the expense account checks for all employees, except for Vizcarrondo's check for $500.00.

39. On August 9, 2018, due to pervasive nature the harassment perpetrated by Defendants against Vizcarrondo, including attacks to his reputation and dignity, change in working conditions, the taking away of his authority, attacks on his family, defendants' refusal to honor Vizcarrondo's compensation and benefits (including the stock option plan as stated below), and others, Vizcarrondo was left no choice but to terminate the employment relationship with Telecinco.

**The Stock Options**

40. As part of Vizcarrondo's "Employment Benefits and Expenses" the Employment Agreement provides that "[a]t the discretion of the Company's Board of Directors, Vizcarrondo will be eligible to receive options under the stock option plan".

41. On July 1st, 2013, Telecinco approved a Senior Executive Stock Option Plan (the "Plan") wherein Telecinco set out the terms and conditions applicable to the issuance of stock options to Senior Executives of Telecinco. The Plan provides, amongst other things, that once the option rights are granted, the Plan shall not be modified in a way that adversely impacts grantee, without such grantee's consent. Additionally, the Plan provides that "[u]pon **vesting and exercising** of the Common Stock share certificates… the Recipient shall have all the rights of a stockholder of 'The Corporation' with respect to the shares of Common Stock."

42. On November 12, 2013, Telecinco issued a Stock Option Certificate in which it

granted Vizcarrondo the option to purchase 2,500 shares of Telecinco at a strike price of $934.00 per share. The Stock Option Certificate states that the options are "Fully vested as of the date of Grant".

43.     On May 4th, 2017, the Board unanimously recognized that the stock options under the Plan may be exercised on a cashless basis and modified the Plan accordingly. ARAP was part of the Board at the time, he participated in the meeting and approved the cashless exercise of the stock options.

44.     During the month of January 2018, Vizcarrondo exercised his option rights over 3 shares of stock of Telecinco paying $2,802 from his own funds and, on February 1, 2018, Telecinco issued the certificate of stock number 44 wherein it recognized Vizcarrondo as the lawful owner of three shares of its stock.

45.     During the Board meeting held on January 26, 2018, recognizing Vizcarrondo's stock option rights JRA asked him if he would exercise his options in the event of the sale of the company, to which Vizcarrondo answered in the affirmative. Moreover, during the Board meeting of February 2, 2018, there was an extensive discussion of the value of each shareholder's participation in the Company in the event of its sale <u>and a cashless exercise of Vizcarrondo's stock options</u>. During the Board meeting of February 2, 2018, Vizcarrondo also informed the Board that he had exercised his option rights over three shares of stock, with no objections of the directors. The Individual Defendants participated in both meetings and the discussions described above.

46.     On July 11, 2018, Vizcarrondo exercised his option to purchase 876 additional shares of stock in Telecinco in a cashless manner. With his request, Vizcarrondo included the

computations for the cashless exercise which were validated by Telecinco's outside auditors.

47. The following day, July 12, 2018, JRA and ARAP sent out a communication to the secretary of the corporation ordering her to abstain from taking any action regarding Vizcarrondo's stock option exercise and calling for an extraordinary meeting of the Board for July 16, 2018.

48. During the July 16, 2018 Board meeting, JRA questioned Vizcarrondo's motive for exercising the option rights; questioned the justification of the Plan in as much, from her perspective, "it takes away a portion of the inheritance of other people" and stated that she believes the stock options "are not part of his compensation". In addition, despite the discussions in the previous Board meetings, Hopgood and ARAP attacked Vizcarrondo, accusing him of hiding from the Board the fact that the Board approved a cashless exercise of the options (as had been previously discussed) and of having a conflict of interest in the exercise of his options because as president he had knowledge of the Company's dealings.

49. Despite the Board's approval and/or acknowledgment of Vizcarrondo's stock options on numerous occasions (under different directors); the fact that outside counsel for Telecinco drafted the Plan; that an opinion of independent counsel was procured before the approval of the Plan; that an opinion of outside counsel for the approval of the cashless exercise was obtained; and the fact that Telecinco had already issued three shares to Vizcarrondo, Defendants decided to hire attorneys and accountants to go on a fishing expedition to justify denying Vizcarrondo's stock option rights, under the guise of responsible corporate action.

50. Almost two months after Vizcarrondo's exercise of his options for 876 shares, and despite Vizcarrondo's repeated requests, Telecinco and its secretary, JRA, without any legal basis

refused to issue the corresponding stock certificates. This, coupled with the facts stated above, constituted a constructive discharge which forced Vizcarrondo out of his job on August 9, 2018.

51. Despite the foregoing, recognizing Vizcarrondo's ownership of the three shares of stock for which a certificate was issued, on August 13, 2018, ARAP sent a communication to all shareholders, including Vizcarrondo, informing them that he had been named interim President.

52. Additionally, on September 7, 2018, also recognizing Vizcarrondo as a shareholder, ARAP invited Vizcarrondo to an Extraordinary Shareholder's meeting to be held on September 11, 2018.

53. Nonetheless, the same day of the stockholder's meeting, Vizcarrondo received a letter from ARAP stating that, on a Board meeting held the day before, they had decided not to honor the stock option rights conferred and exercised by Vizcarrondo. Thus, it would not recognize Vizcarrondo as a shareholder of the 876 shares exercised on July 11, 2018. Additionally, per the communication, Defendants decided to take the law into their own hands and unilaterally declared Vizcarrondo's ownership of the three shares for Vizcarrondo had paid with cash and for which a stock certificate had been issued, null and void.

54. Evidencing their bad faith, in their communication, Defendants even fail to provide any factual or legal basis for their refusal of honor Vizcarrondo's rights as a shareholder. Defendants simply limited their argument to a vague allegation that some <u>unspecified</u> legal requirements were not followed and that some <u>unidentified</u> fiduciary duties were not adhered to.

55. Vizcarrondo attempted to participate in the September 11, 2018 Stockholders meeting but was denied entry to the meeting.

56. On September 14, 2018, Vizcarrondo, through counsel, wrote to ARAP, as Interim-President of Telecinco, demanded that certificates representing ownership of option exercised be issued and that his rights as a shareholder be respected. Also, Vizcarrondo cautioned that any distribution of dividends would be illegal. Thus, under article 5.22 of the Puerto Rico General Corporations Law, the directors would be personally held liable. Telecinco did not respond to Vizcarrondo's letter.

57. On September 21, 2018, Vizcarrondo wrote to the other members of the Board and stated that, as a Board member he has a right to participate in all Board meetings, that he is not being notified of Board meetings as required by Telecinco's By-Laws and, consequently, all actions taken by the Board without notice to him are null and void. Telecinco also ignored Vizcarrondo's communication.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### CONTRACTUAL COMPENSATION FOR UNJUST DISMISSAL

58. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

59. In compliance with the requirements of the Employee Contract, Vizcarrondo put Telecinco on notice of the illegal conduct that he was being submitted to, requested that the conduct cease, and that appropriate corrective action be taken.

60. Telecinco failed to respond to Vizcarrondo's request, failed to take corrective action and failed to provide a harassment free environment as required in Telecinco's Employee Manual.

61. The lack of action by Telecinco and continued acts by the Individual Defendants

against Vizcarrondo, left him no choice but to terminate the employment relationship, configuring a constructive discharge, entitling Vizcarrondo to the amounts agreed to in the Employment Agreement.

## SECOND CAUSE OF ACTION
## EMPLOYEE COMPENSATION – STOCK OPTIONS

62. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

63. In recognition of his achievements and as a performance incentive, Telecinco granted Vizcarrondo the option to purchase 2,500 shares of stock.

64. Vizcarrondo complied with all the requirements of the Plan and acquired a total of 879 shares.

65. Defendants, as part of their illicit conduct toward Vizcarrondo, have deprived Plaintiffs of the shares of stock they are entitled to and his rights as a shareholder of Telecinco.

## THIRD CAUSE OF ACTION
## EMPLOYEE BENEFITS OWED

66. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

67. As part of Vizcarrondo's employee benefits, Telecinco agreed to make him a monthly payment of $1,000 for his expenses.

68. As part of his compensation Vizcarrondo had a right to a guaranteed yearly bonus of $52,000 and a Saving Plan benefits in the amount of $25,000 a year.

69. Defendants, as part of their illegal conduct towards Vizcarrondo, have without justification withheld a $500.00 payment for expenses. Also, Defendants have withheld the proportional share of the guaranteed bonus due to Vizcarrondo in the amount of $30,333.33 and

the proportional share of the Savings plan in the amount of $14,583.33.

## FOURTH CAUSE OF ACTION

### DAMAGES FOR FAILURE TO PROVIDE A HARASMENT FREE WORKPLACE

70. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

71. Telecinco's Employee Manual (the "Manual") recognizes that "every person has a right to be treated with respect, without discrimination, harassment ("acosado"), disturbance, to be humiliated or to be subject of mockery for any reason". Additionally, the Manual provides that "the Company commits itself to maintain a workplace where the employees are free from fear, disturbance or that it could create any type of harassment or of illegal conduct". Telecinco's harassment policy "encompasses every type of illegal harassment" and provides that "no employee has to permit, nor does he/she have to submit to, harassment prohibited under this policy, indistinctive of the position or rank of the alleged harasser".

72. In the event of a complaint of harassment, the Employee Manual provides that Telecinco shall investigate the matter.

73. Telecinco breached its obligations towards Vizcarrondo to a harassment free environment, failed to investigate Vizcarrondo's complaint and failed to take corrective action entitling plaintiffs to damages.

## FIFTH CAUSE OF ACTION

### DAMAGES FOR VIOLATION OF PLAINTIFFS CONSTITUTIONAL RIGHTS

74. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

75. The actions and omissions of Defendants constitute a tort and a violation of the right to dignity and privacy, as well as a safe workplace, pursuant to Article II §§1, 8 and 16 of the

Constitution of the Commonwealth of Puerto Rico.

76. The violation of Vizcarrondo's constitutional rights have caused substantial damages to Plaintiffs entitling them to damages under Article 1802 the Puerto Rico Civil Code.

## VI. DEMAND FOR JURY TRIAL

40) The preceding paragraphs are repeated and realleged as if fully set forth herein.

41) Plaintiff hereby requests that all claims be tried before a jury.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays that this court:

1. Enter a Declaratory Judgment recognizing that the acts and omissions complained herein constitute a constructive discharge of Vizcarrondo's employment.

2. Enter Declaratory Judgment affirming, per the Employment Agreement, Vizcarrondo has a right to a fee of 5% of the sale of the Company, substantially all of its assets or any transaction among shareholders if such transaction takes place within 18 months of the termination of the employment relationship.

3. Award Plaintiff the amount of $45,416.66 for employment benefits owed.

4. Award Plaintiff $500,000 for unjust dismissal, per the Employment Agreement.

5. Enter Declaratory Judgment that Vizcarrondo is the rightful owner of 3 shares of stock effective February 1, 2018 and the owner 876 shares of stock in Telecinco effective July 11, 2018, entitling him to the rights of a stockholder, from the effective date, including any distribution of dividends.

6. Issue preliminary and permanent injunctive relief in the form of an order preventing the Defendants and its agents, successors, employees, attorneys and those acting in concert with

them from engaging in practices which infringes Plaintiffs' rights as shareholders of Telecinco, including the distribution of dividends which excludes Vizcarrondo's rights over his 879 shares of stock.

7. In the event that Plaintiffs are prevented from exercising their stock options or if the Plan is declared void due to Defendants' negligence or their failure to comply with any legal requirement, Plaintiffs request to be compensated in an amount no less than $1,264,599.72 ($1,438.68 per share).

8. Enter a Declaratory Judgment that the acts complained herein violated Plaintiff's right to be free from harassment in the workplace as well as Vizcarrondo's right to privacy, dignity and to a safe working environment pursuant to the Constitution of the Commonwealth of Puerto Rico.

9. Award Vizcarrondo compensatory damages for the emotional distress and damage to his reputation caused in common accord by Defendants in an amount no less than $2,500,000.

10. Award Joni T. Faris, compensatory damages for the emotional distress caused in common accord by Defendants in an amount no less than $1,500,000.

11. Award Plaintiff compensatory damages for back-pay in the amount of $57,834.00.

12. Award Plaintiffs compensatory damages for lost income and benefits in the amount of no less than $239,752.00.

13. Award Plaintiffs the cost of this action, together with reasonable attorneys' fees.

14. Award Plaintiff pre-judgment interest.

15. Grant Plaintiff such other and further relief as the Court may deem appropriate and proper.

## DECLARATION

I, José Alberto Vizcarrondo, of legal age, married, resident of the State of South Dakota, under penalty of perjury declare as follows:

1) I am the principal plaintiff in the case of reference.

2) I have read the contents of this Verified Complaint, which was prepared by our lawyers at our request.

3) All the allegations of fact contained in this Verified Complaint are the truth, either based on my personal knowledge, or because they were obtained from sources that I consider trustworthy.

José Alberto Vizcarrondo

Respectfully submitted, in San Juan, Puerto Rico, this 5th day of October 2018.

PAVIA & LAZARO, PSC  
Attorneys for Plaintiffs  
P.O. Box 9746  
San Juan, PR 00908  
Tel. (787) 954-9058  
Fax (787) 721-4192

s/Carlos Lázaro Castro  
USDC PR 216303  
clazaro@pavialazaro.com