UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| José Alberto Vizcarrondo, Joni T. Faris and the conjugal partnership formed between them, | Civil No. 18-1753 (DRD) |
| Plaintiffs, | Diversity Jurisdiction |
| v. | Trial by jury demanded |
| Telecinco, Inc.; ARA International, LLC ; ERA International Corporation; Hacienda Tres Hermanos, Inc.; Hacienda Igualdad, Inc.; Josefina Ramírez de Arellano, her husband Jorge Soltero and the conjugal partnership formed by them ; Andrés Ramírez de Arellano Paredes ; and Paul Hopgood, his wife Jane Doe and the conjugal partnership formed by them ; Insurance Company A ; Insurance Company B ; and Insurance Company C. | |
| Defendants. | |

## **AMENDED VERIFIED COMPLAINT**

COME NOW PLAINTIFFS, JOSÉ ALBERTO VIZCARRONDO, his wife JONI

T. FARIS and the conjugal partnership formed by them (hereinafter referred collectively

as the "Plaintiffs"), by and through the undersigned attorneys, and respectfully state,

allege and pray as follows:

# I. **NATURE OF ACTION**

This is an action for specific compliance of the employment agreement between José Alberto Vizcarrondo ("Vizcarrondo") and his former employers Telecinco, Inc., ARA International, LLC, ERA International Corporation, Hacienda Tres Hermanos, Inc., Hacienda Igualdad, Inc. (hereinafter all jointly "Telecinco"), wrongful discharge, retaliation, constitutional rights' violation, and for damages suffered by Plaintiffs caused by Defendants' illegal and tortious conduct. Plaintiff seeks, among others, equitable and injunctive relief, compensatory, economic, and emotional damages, back pay, front pay, double damages, punitive damages, prejudgment and post-judgment interests, litigation costs, and reasonable attorneys' fees.

# II. **PARTIES**

1. Plaintiffs are citizens of the United States, married to each other and residents of 1 W. Penmarch Place, Sioux Falls, South Dakota, United States. Plaintiff, Vizcarrondo worked for Telecinco, Inc. for 13 years up until August 9, 2018 when he was constructively discharged.

2. Defendant Telecinco, Inc. is a corporation created and existing under the laws of the Commonwealth of Puerto Rico. Telecinco's corporate offices are located at 1519 Ponce de León Ave., First Bank Building, 15th Floor, Santurce, PR 00909. It was Vizcarrondo's employer since he provided services to the same, and Vizcarrondo received his employment compensation from this entity.

2

3.  ARA International, LLC is a corporation created and existing under the laws of the Commonwealth of Puerto Rico.  Its corporate offices are located at 1519 Ponce de León Ave., First Bank Building, 15th Floor, Santurce, PR 00909.  It was also Vizcarrondo's employer since he provided services to this entity, and Vizcarrondo received employment compensation from this company through direct payment by Telecinco, Inc., which had an intra-company arrangement concerning shared services between several companies.

4.  ERA International Corporation is a corporation created and existing under the laws of the Commonwealth of Puerto Rico.  Its corporate offices are located at 1519 Ponce de León Ave., First Bank Building, 15th Floor, Santurce, PR 00909.  It was also Vizcarrondo's employer since he provided services to this entity, and Vizcarrondo received employment compensation from this company through direct payment by Telecinco, Inc., which had an intra-company arrangement concerning shared services between several companies.

5.  Hacienda Tres Hermanos, Inc. is a corporation created and existing under the laws of the Commonwealth of Puerto Rico.  Its corporate offices are located at 1519 Ponce de León Ave., First Bank Building, 15th Floor, Santurce, PR 00909.  It was also Vizcarrondo's employer since he provided services to this entity, and Vizcarrondo received employment compensation from this company through direct payment by Telecinco, Inc., which had an intra-company arrangement

3

concerning shared services between several companies.

6. Hacienda Igualdad, Inc. is a corporation created and existing under the laws of the Commonwealth of Puerto Rico.  Its corporate offices are located at 1519 Ponce de León Ave., First Bank Building, 15th Floor, Santurce, PR 00909.  It was also Vizcarrondo's employer since he provided services to this entity, and Vizcarrondo received employment compensation from this company through direct payment by Telecinco, Inc., which had an intra-company arrangement concerning shared services between several companies.

7.  Defendants Josefina Ramirez de Arellano ("JRA") and Jorge Soltero are natural persons citizens of the United States residents of the Commonwealth of Puerto Rico who, per Plaintiffs' belief, are married to each other under the conjugal partnership regime, which is also included as a defendant. JRA is a stockholder, director and secretary of Telecinco.

8. Defendant Andrés Ramirez de Arellano ("ARAP") is a natural person citizen of the United States, resident of the Commonwealth of Puerto Rico. ARAP is director of Telecinco and, also, is interim president of the Telecinco.

9. Defendant Paul Hopgood ("Hopgood") and Jane Doe are natural persons citizen of the United States, residents of the Commonwealth of Puerto Rico, who per Plaintiff's belief, are married to each other under the conjugal partnership regime, which is also included as a defendant.  Hopgood is a director of

4

Telecinco. Jane Doe is the fictitious name used to designate Hopgood's wife whose identity is unknown at this time.

10. Defendants Insurance Company A, Insurance Company B, and Insurance Company C, are insurance companies designated with fictitious names because their identities are unknown at this time, who issued policies which provide coverage of the claims contained herein.

### III. <u>JURISDICTION AND VENUE</u>

11. Plaintiffs bring their complaint under federal diversity jurisdiction, 28 U.S.C. §1332, as the parties are completely diverse in citizenship and the amount of controversy exceeds $75,000.

12. The Court's supplemental jurisdiction is also invoked by the Plaintiffs pursuant to 28 U.S.C. § 1367 to hear the local law claims because these are so related to the claims over which the Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

13. Supplemental Jurisdiction is specifically invoked for this Court to hear and decide pendent claims arising under Puerto Rico Law 115, under Article 1802 and 1803 of the Puerto Rico Civil Code, under the Puerto Rico Constitution, under the Puerto Rico Civil Code for breach of contract, and under any other applicable laws of the Commonwealth of Puerto Rico.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2), since

this is the judicial district where the events, conduct and/or omissions giving rise to the instant Amended Verified Complaint occurred.

## IV. <u>STATEMENT OF FACTS</u>

### <u>Background</u>

15. Telecinco was founded by Mr. Vizcarrondo's grandfather Mr. Alfredo Ramirez de Arellano who was married to Mrs. Esther del Valle (the "Grandparents"). Between them they fathered three children: Gloria Ramirez de Arellano ("GRA"), Josefina Ramirez de Arellano ("JRA") and Alfred Ramirez de Arellano. Vizcarrondo is son to GRA.

16. During the first half of the 2000's Vizcarrondo worked as Head of Portfolio Management for ING Bank in Geneva, Switzerland. At his grandfather's request, Mr. Vizcarrondo moved his family to Puerto Rico and assumed the Vice-Presidency of Telecinco and its related corporate affiliates in the year 2005. A few years later, Vizcarrondo was named President.

17. On June 18, 2007, the Grandparents created several voting trusts as to their shareholdings in Telecinco and other entities, wherein Vizcarrondo's mother, GRA, was designated as trustee for a term of 10 years.

18. The designation of GRA as Trustee, coupled with Alfredo Ramirez de Arellano's designation of Vizcarrondo as his successor to lead Telecinco and other family companies, incensed JRA and prompted her to file multiple

complains against GRA, Vizcarrondo and the Grandparents.

19. On August 2007, JRA filed a complaint wherein she alleged that the Grandparents were being abused by GRA and Vizcarrondo and sought a protective order on their behalf. The complaint was dismissed.

20. On August 2007, JRA also filed a complaint against Plaintiffs and GRA requesting that the voting trust be declared null and void and sought damages against GRA and Vizcarrondo, his wife and the conjugal partnership formed between. JRA alleged, amongst other things, that they had allegedly manipulated the Grandparents, that the voting trust was executed under deceit ("dolo") and/or intimidation perpetrated by GRA and Vizcarrondo, and that the Grandparents' assets were being mishandled. After numerous amendments to the complaint, the complaint was also dismissed.

21. On October 2007, JRA filed another complaint. This time, JRA requested that the Grandparent be declared incompetent and that a legal guardian be assigned. In that case, the Public Attorney for Family Affairs ("Procuradora de Asuntos de Familia") requested its dismissal because, per her report, there was no factual basis for JRA's request and JRA wanted to use the complaint as a "fishing expedition" into the Grandparent's medical records.

22. On October 2007, JRA also filed with the Federal Communications Commission ("FCC") an opposition, in reconsideration, to an Application for Consent to

Transfer Control of Telecinco, Inc. JRA's petition before the FCC was also denied.

23. Mrs. Esther del Valle passed away on January 2010 and on April 2010 Mr. Alfredo Ramirez de Arellano, by agreement between the parties, was declared legally incompetent. A year later, on May 2011, Mr. Alfredo Ramírez de Arellano passed away.

24. In February 2011, Telecinco and Vizcarrondo entered into an Employment Agreement (the "Employment Agreement"). As part of such employment agreement with Telecinco, Vizcarrondo was also named President the of all codefendant companies Telecinco, Inc., ARA International, LLC, ERA International Corporation, Hacienda Tres Hermanos, Inc., and Hacienda Igualdad, Inc.

25. Vizcarrondo provided services for all of such entities mentioned in the preceding paragraph and acted as Chief Executive Officer (CEO)[1] of each corporation. He was also the President of the Board of Directors of each corporation.

26. As per the specific provisions of the Employment Agreement, Vizcarrondo is entitled to a payment of $500,000 in the event Telecinco terminates the

---

[1] The Employment Agreement indicates that Vizcarrondo was the "Chief Operating Officer" of all such entities, although he really was the Chief Executive Officer, since there was no officer with a higher rank than Vizcarrondo in any of such corporations or the board of directors of such corporations.

employment relationship without cause or if "Vizcarrondo can show that he terminated [the] Agreement for good cause", provided that Vizcarrondo has first provided Telecinco notice and time to correct the conduct which propitiated the termination of the employment relationship. Also, in either case, the Employment Agreement stipulates that Vizcarrondo shall also be entitled to a fee of 5% of the proceeds from the sale of Telecinco, substantially all its assets, or a sale amongst stockholders if such sale occurs within 18 months of the termination of the employment relationship.

27. As recognized by Telecinco's Board of Directors on numerous occasions, under Vizcarrondo's leadership, Telecinco thrived. Among other things, Telecinco grew from one local station limited to the western part of the island, to one of the largest television companies in Puerto Rico with seven stations and four channels. Revenues doubled during a time when the advertising market was shrinking, and the economy was in recession. Today, Telecinco and its affiliated entities, are more diversified, have greater financial health and serve three times as many customers compared to the time Vizcarrondo took over as president.

28. On June 18, 2017 the Voting Trust expired.

**Vizcarrondo's Job conditions after the Voting Trust expired**

29. On September 1st, 2017, to extend an olive-branch to JRA, Vizcarrondo wrote her a letter in which he invited JRA to "leave the differences aside" and to "work

together" for the good of Telecinco. In turn, JRA responded stating that she will not forgive him or his mother for the past, accused Vizcarrondo of acts that could construe dishonesty ("actos de dudosa honestidad") and to have provided disinformation. Also, JRA asserted that Vizcarrondo's mother is the epitome of laziness ("epitome de la vagancia"), of having "interior demons", of mental health problems ("tostadera") and lack business sense. Finally, in a veiled threat JRA stated that there are people equally or more capable to run the Companies ("Hay otras personas igual o mejor capacitadas para dirigir [las] empresas"), that she was going to modify some things ("modificar algunas cosas") and that sooner or later she would be there ("tarde o temprano estaré allí").

30. Vizcarrondo responded to JRA by letter of November 17, 2017, where he cautioned that her behavior constitutes harassment and demanded that she cease her direct and indirect attacks towards him and his family.

31. On December 15, 2017, a Stockholder's meeting to elect the members of the board was held. Driven by JRA, the discussion became aggressive and disorganized. JRA and ARAP's mother[2] brought forth candidates that had not been vetted by the Board, brought their attorneys into the meeting, blocked GRA from nominating herself as director without an explanation and, in general,

---

[2] ARAP's mother, Mrs. Gloria Paredes, acts as legal guardian for ARAP's father.

created an atmosphere of confusion and hostility. After the meeting, JRA admitted that it had all been pre-planned by her and ARAP's mother, Georgina Paredes. Triumphant, JRA expressed, referring to Vizcarrondo, that "they would keep him for now because they needed him".

32. Effective January 1st, 2018, JRA became a member of the Board of Directors of Telecinco (the "Board"). JRA, now with the help of ARAP and Hopgood (hereinafter JRA, ARAP and Hopgood shall be referred to as the "Individual Defendants"), in common accord, began a campaign to oust Vizcarrondo from Telecinco, by humiliating and insulting him, undermining his authority, taking away his functions,  putting into question his honesty, by ordering staff around and hiring new law firms without consulting management, without considering proposals and without previous Board approval. Also, under false pretenses, without any reasonable basis and without prior Board approval, the Individual Defendants hired a Certified Public Accountant to do a forensic audit of Mr. Vizcarrondo's dealings with the Company going back ten years.

33. On several Board meetings, director and CPA Mr. Eduardo Gonzalez-Green ("Gonzalez-Green") and Vizcarrondo questioned the necessity, motives and objectives of the forensic audit ordered by the Individual Defendants with Telecinco's funds, but no reasonable explanation was provided.  The Individual Defendants lied, stating that the hiring of the forensic accountants did not have

11

a specific objective and that the reason for their hiring was to have them at the ready in the event a need arose for a consultation.  The Board agreed that any assignment to be given to the auditors would require the Board's previous approval.

34. Due to the above, on May 18, 2018, as required by the Employment Agreement, Vizcarrondo complained to the Board of Directors of Telecinco (which included all other co-defendant companies since they all shared the same members in their respective board of directors), of the harassment and hostile work environment that he was being subjected to by JRA, ARA and Hopgood with the intent of forcing him out of his job, demanded that it cease immediately and that corrective measures be taken.

35. Telecinco never responded to Vizcarrondo's letter.

36. Nevertheless, on June 6, 2018, the Individual Defendants as "members of the Board of Directors of Telecinco, Inc." sent Vizcarrondo a letter denying that any harassment had taken place. However, in an apparent admission of wrongdoing by JRA, the Individual Defendants classified JRA's actions as "personal or family differences or conflicts".

37. To the best of Plaintiff's knowledge, Telecinco did not initiate an investigation into the facts alleged by Vizcarrondo, as required by the Employee Manual, nor did Telecinco take, or offer to take, any corrective action. To the contrary,

12

Defendants' efforts to oust Vizcarrondo intensified and he was further retaliated against for having opposed to Defendants' illegal employment practices.

38. On July 23, 2018, without any valid reason or explanation, Vizcarrondo was removed as treasurer of Telecinco and substituted by ARAP. On that same date, the Board withdrew Vizcarrondo's authority to make electronic bank transfers. During Board Meetings, on and off the record, the Individual Defendants expressed their disdain for Vizcarrondo and his family and that they did not trust him.

39. JRA even admitted to CPA Gonzalez-Green that she had a strategy to deal with Vizcarrondo and it was to be little by little.

40. During July 2018, taking advantage of the fact that Vizcarrondo was traveling outside of Puerto Rico, ARAP visited the offices of Telecinco with the forensic accountant. During his visit, ARAP introduced the forensic auditor to Telecinco's staff, required Telecinco's employees' cooperation as to the forensic audit and that a space be provided within Telecinco's offices so that the forensic accountant could perform his investigation into Vizcarrondo.

41. Vizcarrondo objected ARAP's actions inasmuch, amongst other things, ARAP did not have the authority to give orders to staff, the Board had not authorized the assignment of any work to the auditors, there was no estimate of cost for the work to be performed, the Board had not authorized any budget for the audit and

the Individual Defendants had failed to provide a justification for the audit.

42. On July 6, 2018, the only Director of the Corporation not involved in the controversy, CPA Gonzalez-Green, recognizing the illegality of his fellow board members' actions, sent a communication to the Board questioning the motives and necessity of the forensic audit and classifying the investigation as an "expedition".

43. Defendants disregarded the objections of Vizcarrondo and CPA González-Green and proceeded to audit Vizcarrondo's dealings with Telecinco within the offices of Telecinco, during business hours, in view of Telecinco's employees.

44. The decision to introduce the forensic accountant to the employees and to hold the investigation into Vizcarrondo within Telecinco's offices, during working hours, was made by the Individual Defendants with the intent of causing Vizcarrondo harm, to damage his reputation, to put his honesty into question in front of Telecinco's employees, and to create a rift between Vizcarrondo and the employees of Telecinco.

45. Six days later, on July 12, 2018, CPA Gonzalez-Green critiqued the hiring of Mr. Carlos Díaz-Olivo as attorney for Telecinco inasmuch he had a clear conflict of interest. Mr. Díaz-Olivo had previously represented JRA in matters related to Telecinco and had even attended a stockholder's meeting on her behalf. On that same day, and just six days after CPA Gonzalez-Green classified the forensic

14

audit as an "expedition", CPA Gonzalez-Green, was removed as director of Telecinco by JRA and ARAP's mother without an explanation or basis.

46. On July 19, 2018, with the control of Telecinco's Board, the Individual Defendants removed Telecinco's Secretary, who had served for several years and substituted her with JRA. Additionally, on July 25, 2018, the Board controlled by the Individual Defendants, in order to assert unfettered control over the forensic audit, decided to create and "audit committee" and named ARAP, JRA and Hopgood as its members.

47. On August 7, 2018, without any explanation or justification, ARAP signed all the expense account checks for all employees, except for Vizcarrondo's check for $500.00.

48. On August 9, 2018, due to pervasive nature the harassment perpetrated by Defendants against Vizcarrondo, including attacks to his reputation and dignity, change in working conditions, the taking away of his authority, attacks on his family, Defendants' refusal to honor Vizcarrondo's compensation and benefits (including the stock option plan as stated below), and others, Vizcarrondo was forced and had no other reasonable alternative but to terminate the employment relationship with Telecinco.

49. After trying numerous times with the Defendants to seek a resolution, Vizcarrondo did not obtain any remedy for the retaliatory treatment that he was

15

subjected to.

50. Defendants' conduct that forced Vizcarrondo to resign constitutes a constructive

discharge and retaliation under the applicable statutes.

**The Stock Options**

51. As part of Vizcarrondo's "Employment Benefits and Expenses" the

Employment Agreement provides that "[a]t the discretion of the Company's

Board of Directors, Vizcarrondo will be eligible to receive options under the

stock option plan".

52. On July 1st, 2013, Telecinco approved a Senior Executive Stock Option Plan (the

"Plan") wherein Telecinco set out the terms and conditions applicable to the

issuance of stock options to Senior Executives of Telecinco. The Plan provides,

amongst other things, that once the option rights are granted, the Plan shall not

be modified in a way that adversely impacts grantee, without such grantee's

consent. Additionally, the Plan provides that "[u]pon **vesting** and **exercising** of

the Common Stock share certificates… the Recipient shall have all the rights of

a stockholder of 'The Corporation' with respect to the shares of Common

Stock."

53. On November 12, 2013, Telecinco issued a Stock Option Certificate in which it

granted Vizcarrondo the option to purchase 2,500 shares of Telecinco at a strike

price of $934.00 per share. The Stock Option Certificate states that the options

are "Fully vested as of the date of Grant".

54. On May 4th, 2017, the Board unanimously recognized that the stock options under the Plan may be exercised on a cashless basis and modified the Plan accordingly. ARAP was part of the Board at the time, he participated in the meeting and approved the cashless exercise of the stock options.

55. During the month of January 2018, Vizcarrondo exercised his option rights over 3 shares of stock of Telecinco paying $2,802 from his own funds and, on February 1, 2018, Telecinco issued the certificate of stock number 44 wherein it recognized Vizcarrondo as the lawful owner of three shares of its stock.

56. During the Board meeting held on January 26, 2018, recognizing Vizcarrondo's stock option rights JRA asked him if he would exercise his options in the event of the sale of the company, to which Vizcarrondo answered in the affirmative. Moreover, during the Board meeting of February 2, 2018, there was an extensive discussion of the value of each shareholder's participation in the Company in the event of its sale and a cashless exercise of Vizcarrondo's stock options. During the Board meeting of February 2, 2018, Vizcarrondo also informed the Board that he had exercised his option rights over three shares of stock, with no objections of the directors. The Individual Defendants participated in both meetings and the discussions described above.

57. On July 11, 2018, Vizcarrondo exercised his option to purchase 876 additional

shares of stock in Telecinco in a cashless manner. With his request, Vizcarrondo included the computations for the cashless exercise which were validated by Telecinco's outside auditors.

58. The following day, July 12, 2018, JRA and ARAP sent out a communication to the secretary of the corporation ordering her to abstain from taking any action regarding Vizcarrondo's stock option exercise and calling for an extraordinary meeting of the Board for July 16, 2018.

59. During the July 16, 2018 Board meeting, JRA questioned Vizcarrondo's motive for exercising the option rights; questioned the justification of the Plan inasmuch, from her perspective, "it takes away a portion of the inheritance of other people" and stated that she believes the stock options "are not part of his compensation". In addition, despite the discussions in the previous Board meetings, Hopgood and ARAP attacked Vizcarrondo, accusing him of hiding from the Board the fact that the Board approved a cashless exercise of the options (as had been previously discussed) and of having a conflict of interest in the exercise of his options because as president he had knowledge of the Company's dealings.

60. Despite the Board's approval and/or acknowledgment of Vizcarrondo's stock options on numerous occasions (under different directors); the fact that outside counsel for Telecinco drafted the Plan; that an opinion of independent counsel

18

was procured before the approval of the Plan; that an opinion of outside counsel for the approval of the cashless exercise was obtained; and the fact that Telecinco had already issued three shares to Vizcarrondo, Defendants decided to hire attorneys and accountants to go on a fishing expedition to justify denying Vizcarrondo's stock option rights, under the guise of responsible corporate action.

61. Almost two months after Vizcarrondo's exercise of his options for 876 shares, and despite Vizcarrondo's repeated requests, Telecinco and its secretary, JRA, without any legal basis refused to issue the corresponding stock certificates. This, coupled with the facts stated above, constituted a constructive discharge which forced Vizcarrondo out of his job on August 9, 2018.

62. Despite the foregoing, and after recognizing Vizcarrondo's ownership of the three shares of stock for which a certificate was issued, on August 13, 2018, ARAP sent a communication to all shareholders, including Vizcarrondo, informing them that he had been named interim President.

63. Additionally, on September 7, 2018, also recognizing Vizcarrondo as a shareholder, ARAP invited Vizcarrondo to an Extraordinary Shareholder's meeting to be held on September 11, 2018.

64. Nonetheless, the same day of the stockholder's meeting, Vizcarrondo received a letter from ARAP stating that, on a Board of Directors meeting held the day

19

before, they had decided not to honor the stock option rights conferred and exercised by Vizcarrondo. Thus, the Board would not recognize Vizcarrondo as a shareholder of the 876 shares exercised on July 11, 2018. Additionally, per the communication, Defendants decided to take the law into their own hands and unilaterally declared null and void Vizcarrondo's ownership of the three shares for Vizcarrondo had paid with cash and for which a stock certificate had been issued.

65. Evidencing their bad faith, in their communication, Defendants even fail to provide any factual or legal basis for their refusal of honor Vizcarrondo's rights as a shareholder. Defendants simply limited their argument to a vague allegation that some <u>unspecified</u> legal requirements were not followed and that some <u>unidentified</u> fiduciary duties were not adhered to.

66. Vizcarrondo attempted to participate in the September 11, 2018 Stockholders meeting but was denied entry to the meeting.

67. On September 14, 2018, Vizcarrondo, through counsel, wrote to ARAP, as Interim-President of Telecinco, demanded that certificates representing ownership of option exercised be issued and that his rights as a shareholder be respected. Also, Vizcarrondo cautioned that any distribution of dividends would be illegal. Thus, under article 5.22 of the Puerto Rico General Corporations Law, the directors would be personally held liable. Telecinco did not respond to

20

Vizcarrondo's letter.

68. On September 21, 2018, Vizcarrondo wrote to the other members of the Board and stated that, as a Board member he has a right to participate in all Board meetings, that he is not being notified of Board meetings as required by Telecinco's By-Laws and, consequently, all actions taken by the Board without notice to him are null and void. Telecinco also ignored Vizcarrondo's communication.

69. In addition, after Vizcarrondo's wrongful and illegal discharge from his employment, Telecinco has distributed dividends and made monetary distributions to all of its stockholders, except for Vizcarrondo.

70. Telecinco and the remaining co-defendants not only have conspired to deprive Vizcarrondo from dividends and/or distributions that he may also be entitled to, but have also conspired to deprive Vizcarrondo of his stocks, his stock options, and his rights (including the decision-making and voting rights) concerning the defendant companies.

71. Defendants' poor and inexperienced administration of the defendant companies, as well as their continued and blatantly exhibited bad faith and retaliatory animus against Plaintiff Vizcarrondo, puts at serious risk Vizcarrondo's interests and rights in Telecinco in a manner that will cause the Plaintiffs irreparable harm.

# V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### CONTRACTUAL COMPENSATION FOR UNJUST DISMISSAL

**72.** Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

**73.** In compliance with the requirements of the Employee Contract, Vizcarrondo put Telecinco on notice of the illegal conduct that he was being submitted to, requested that the conduct cease, and that appropriate corrective action be taken.

**74.** Telecinco failed to respond to Vizcarrondo's request, failed to take corrective action and failed to provide a harassment free environment as required in Telecinco's Employee Manual.

**75.** The lack of action by Telecinco and continued acts by the Individual Defendants against Vizcarrondo, left him no choice but to terminate the employment relationship, configuring a constructive discharge, entitling Vizcarrondo to the amounts agreed to in the Employment Agreement.

**76.** Under the prevailing circumstances, and after having exhausted every possible option and alternative available, Vizcarrondo had no other reasonable alternative but to resign to his employment, to avoid the harassment, humiliation, attacks on his dignity and self-esteem, continued breach of his employment agreement and contracts executed between the parties, and the illegal conduct that he was being a victim of, all of which was causing him and continues to be the source

of great emotional, physical, and mental damages, among others.

**SECOND CAUSE OF ACTION**
**UNLAWFUL RETALIATION UNDER PUERTO RICO LAW 115**

77. Plaintiffs incorporate to this section all previous paragraphs of this Complaint as if fully set forth herein.

78. Defendants committed unlawful employment practices when they retaliated against Vizcarrondo for his complaints and opposition to the Defendant's illegal employment practices.

79. Vizcarrondo's complaints and opposition were also protected from retaliation by Puerto Rico Law 115.   However, the Defendants disregarded the specific provisions of Puerto Rico Law 115 and continued putting undue pressure on Vizcarrondo and even increased the same with their actions in a retaliatory manner until they ultimately constructively discharged him from his employment.

80. As the direct and proximate result of Defendants' unlawful, willful and intentional violation of Vizcarrondo's statutory rights, he has suffered, among others, severe mental anguish, emotional distress, anxiety, loss of employment and future employment opportunities, loss of wages and benefits, pain and suffering, loss of sleep, depression, loss of self-esteem, loss of appetite, physical, mental and moral compensatory damages, for which the Defendants are jointly

liable.  Vizcarrondo continues to suffer this damages and injuries to this date and it is anticipated that he will continue to suffer these damages in the future.

81. Defendant's conduct and employment actions and practices are unlawful in violation of Puerto Rico Law 115.

82. As a result of the violation of Vizcarrondo's rights under the above-mentioned statute, the Defendants are liable for all damages caused to him as a result of their illegal actions and omissions.  Vizcarrondo is entitled to the rights and remedies provided by Puerto Rico Law 115 including, but not limited to, compensatory damages, lost wages and benefits (back pay and front pay), double damages, attorneys' fees, and to all remedies afforded by the applicable laws invoked herein, and as requested in the "Prayer for Relief" portion of this Complaint.

### THIRD CAUSE OF ACTION
### EMPLOYEE COMPENSATION – STOCK OPTIONS

83.  Plaintiffs incorporate to this section all previous paragraphs of this Complaint as if fully set forth herein.

84.  In recognition of his achievements and as a performance incentive, Telecinco granted Vizcarrondo the option to purchase 2,500 shares of stock.

85.  Vizcarrondo complied with all the requirements of the Plan and acquired a total of 879 shares.

86. Defendants, as part of their illicit conduct toward Vizcarrondo, have deprived Plaintiffs of the shares of stock they are entitled to and Vizcarrondo's rights as a shareholder of Telecinco.

87. The Defendants are liable to the Plaintiffs for all damages caused to them as a result of Defendants' illegal actions and omissions.  Vizcarrondo is entitled to compensatory damages, loss of value in the stocks, and to all remedies afforded by the applicable laws invoked herein, and as requested in the "Prayer for Relief" portion of this Complaint.

## FOURTH CAUSE OF ACTION
## EMPLOYEE BENEFITS OWED

88. Plaintiffs incorporate to this section all previous paragraphs of this Complaint as if fully set forth herein.

89. As part of Vizcarrondo's employee benefits, Telecinco agreed to make him a monthly payment of $1,000 for his expenses.

90. As part of his compensation, Vizcarrondo had a right to a guaranteed yearly bonus of $52,200 and a Life Insurance Savings Plan benefits in the amount of $25,000 a year.

91. Defendants, as part of their illegal conduct towards Vizcarrondo, have without justification withheld a $500.00 payment for expenses. Also, Defendants have withheld the proportional share of the guaranteed bonus due to Vizcarrondo in

the amount of $30,333.33 and the proportional share of the Savings plan in the amount of $14,583.33.

92. The Defendants are liable to the Plaintiffs for all damages caused to them as a result of Defendants' illegal actions and omissions.  Vizcarrondo is entitled to compensatory damages, the payment of monetary amounts owed and those that will continue to accrue during the course of this litigation, and to all remedies afforded by the applicable laws invoked herein, and as requested in the "Prayer for Relief" portion of this Complaint.

## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACTS

93. Plaintiffs incorporate to this section all previous paragraphs of this Complaint as if fully set forth herein.

94. The Defendants breached, among others, Vizcarrondo's Employment Agreement, their own Employee Manual, and the stock purchase agreement.

95. Accordingly, the Defendants are jointly liable to the Plaintiffs for all the damages resulting for their breach of contracts, as well as Defendants' illegal actions and omissions.

## SIXTH CAUSE OF ACTION
## DAMAGES FOR FAILURE TO PROVIDE A
## HARASMENT-FREE WORKPLACE

96. Plaintiffs incorporate to this section all previous paragraphs of this Complaint as

if fully set forth herein.

97. Telecinco's Employee Manual (the "Manual") recognizes that "every person has a right to be treated with respect, without discrimination, harassment ("acosado"), disturbance, to be humiliated or to be subject of mockery for any reason". Additionally, the Manual provides that "the Company commits itself to maintain a workplace where the employees are free from fear, disturbance or that it could create any type of harassment or of illegal conduct". Telecinco's harassment policy "encompasses every type of illegal harassment" and provides that "no employee has to permit, nor does he/she have to submit to, harassment prohibited under this policy, indistinctive of the position or rank of the alleged harasser".

98. In the event of a complaint of harassment, the Employee Manual provides that Telecinco shall investigate the matter.

99. Telecinco breached its obligations towards Vizcarrondo to a harassment free environment, failed to investigate Vizcarrondo's complaint and failed to take corrective action entitling plaintiffs to damages.

100. The Defendants are liable to the Plaintiffs for all damages caused to them as a result of Defendants' illegal actions and omissions that were also in breach of contract. Vizcarrondo is entitled to receive compensatory damages, and to all remedies afforded by the applicable laws invoked herein, and as requested in the

27

"Prayer for Relief" portion of this Complaint.

## SEVENTH CAUSE OF ACTION
## DAMAGES UNDER ARTICLES 1802 AND 1803 OF THE
## PUERTO RICO CIVIL CODE

**101.** Plaintiffs incorporate to this section all previous paragraphs of this Complaint as if fully set forth herein.

**102.** Defendants' negligent and illegal conduct constituted the proximate cause of Plaintiffs' damages and injuries.

**103.** Aside from the damages resulting as a direct consequence of Defendants' negligent and intentional actions as described above, the Individual Defendants, after a letter of intent for the sale of the assets of Telecinco had been executed with a serious and potential buyer for a minimum price of $11,800,000, sabotaged the sale transactions and refused to sell the Company solely to avoid paying to Vizcarrondo the fee of 5% of the sale of the Company to which he is entitled by virtue of his Employment Agreement. As a result of the Individual Defendants' actions, Plaintiff lost $590,000 for which the Defendants are jointly liable and responsible.

**104.** Defendants are jointly and vicariously liable for their acts and omissions, as well as for the acts of their employees or representatives, as they have caused damages 'to the Plaintiffs through their negligent and/or willful acts under Articles 1802 and 1803 of the Puerto Rico Civil Code.

28

105. As the direct and proximate result of Defendants' unlawful, willful and intentional violation of Plaintiff's statutory rights, Plaintiffs have suffered, among others, severe mental anguish, emotional distress, anxiety, loss of employment and future employment opportunities, loss of wages and benefits, pain, and suffering, loss of sleep, depression, loss of self-esteem, loss of appetite, physical, mental and moral compensatory damages, for which the Defendants are jointly liable. Plaintiffs continues to suffer this damages and injuries to this date and it is anticipated that he will continue to suffer these damages in the future.

106. Plaintiffs are entitled to the rights and remedies provided by Articles 1802 and 1803 of the Puerto Rico Civil Code, and to all remedies afforded by the applicable laws invoked herein, and as requested in the "Prayer for Relief" portion of this Complaint.

**EIGHT CAUSE OF ACTION**
**DAMAGES FOR VIOLATION OF PLAINTIFFS CONSTITUTIONAL RIGHTS**

107. Plaintiffs incorporate to this section all previous paragraphs of this Complaint as if fully set forth herein.

108. The actions and omissions of Defendants constitute a tort and a violation of the right to dignity and privacy, as well as a safe workplace, pursuant to Article II §§1, 8 and 16 of the Constitution of the Commonwealth of Puerto Rico.

**109.** The violation of Vizcarrondo's constitutional rights have caused substantial damages to Plaintiffs entitling them to damages under Article 1802 the Puerto Rico Civil Code.

## VI. DEMAND FOR JURY TRIAL

**110.** All the preceding paragraphs are repeated and realleged as if fully set forth herein.

**111.** Plaintiffs hereby request that all causes of action and claims be tried before a jury.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court for the following relief:

1. Enter a Declaratory Judgment recognizing that the acts and omissions complained herein constitute a constructive discharge of Vizcarrondo's employment.

2. Enter Declaratory Judgment affirming that, per the Employment Agreement, Vizcarrondo has a right to a fee of 5% of the sale of the Company, substantially all of its assets or any transaction among shareholders if such transaction takes place within 18 months of the termination of the employment relationship.

3. Award Plaintiff employment benefits owed that to this date amount to $45,416.66.

4. Award Plaintiff $500,000 for unjust dismissal, per the Employment Agreement.

5. Enter Declaratory Judgment that Vizcarrondo is the rightful owner of 3 shares of stock effective February 1, 2018, and the owner 876 shares of stock in Telecinco effective July 11, 2018, entitling him to the rights of a stockholder, from the effective date, including any distribution of dividends.

6. Issue preliminary and permanent injunctive relief in the form of an order preventing the Defendants and its agents, successors, employees, attorneys and those acting in concert with them from engaging in practices which infringes Plaintiffs' rights as shareholders of Telecinco, including the distribution of dividends excluding Vizcarrondo's rights over his 879 shares of stock.

7. In the event that Plaintiffs are prevented from exercising their stock options or if the Plan is declared void due to Defendants' negligence or their failure to comply with any legal requirement, Plaintiffs request to be compensated in an amount no less than $1,264,599.72 ($1,438.68 per share).

8. Enter a Declaratory Judgment that the acts complained herein violated Plaintiff's right to be free from harassment in the workplace as well as Vizcarrondo's right to privacy, dignity and to a safe working environment pursuant to the Constitution of the Commonwealth of Puerto Rico.

9. Award Vizcarrondo no less than $1,500,000 in compensatory damages for the retaliation that he was a victim of, as well as double damages as mandated by Law 115.

31

10. Award Vizcarrondo compensatory damages for the emotional distress and damage to his reputation caused in common accord by Defendants for the breach of contracts, harassment, and constitutional rights' violations in an amount no less than $2,500,000.

11. Award Joni T. Faris, compensatory damages for the emotional distress caused in common accord by Defendants in an amount no less than $1,500,000.

12. Award Plaintiff compensatory damages for back-pay, which at the present time amounts to no less than $70,666.67 (2.5 months of salary and benefits), and the same will continue to increase.

13. Award Plaintiffs compensatory damages for lost income and benefits up to his retirement age, which to this date amount to no less than $3,731,200. ($185,000 base salary + $52,200 guaranteed bonuses + $9,000 health plan + $25,000 savings plan + $68,000 expense reimbursement = $339,200 per year x 11 years up to retirement age).

14. Award Plaintiff double damages pursuant to the applicable statutory penalties.

15. Award Plaintiffs the cost of this action, together with reasonable attorneys' fees.

16. Award Plaintiff pre-judgment interest to each and every monetary amount that has been claimed in this Amended Verified Complaint and that is awarded as a result of the same.

17. Grant Plaintiff such other and further relief as the Court may deem just and

appropriate.

STATEMENT

We, José Alberto Vizcarrondo and Joni T. Faris, of legal age, married, residents of the State of South Dakota, under penalty of perjury, declare as follows:

1. We are the plaintiffs in the case of reference.

2. We have read the contents of this Amended Verified Complaint, which was prepared by our lawyers at our request.

3. All the allegations of fact contained in this Amended Verified Complaint are the truth, either based on our personal knowledge, or because they were obtained from sources that we consider trustworthy.

José Alberto Vizcarrondo

10 / 22 / 2018
Date

Joni T. Faris

10 / 22 / 2018
Date

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 24th day of October 2018.



P.O. Box 195343                                    Citibank Towers, Suite 500
San Juan, Puerto Rico                           252 Ponce de León Avenue
00919-5343                                        San Juan, Puerto Rico 00918

Tel. (787) 758-1400
Fax: (787) 758-1414
Cel. (787) 460-3456

www.laborcounsels.com
paula@laborcounsels.com
pico@laborcounsels.com

S/ CARLOS R. PAULA
Attorney for Plaintiffs
USDCPR NO. 212009

S/ JAIME E. PICÓ-RODRÍGUEZ
Attorney for Plaintiffs
USDCPR NO. 228113