UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| José Alberto Vizcarrondo, Joni T. Faris and the conjugal partnership formed between them, | Civil No. 18-1753 (DRD) |
| Plaintiffs, | Diversity Jurisdiction |
| v. | Trial by jury demanded |
| Telecinco, Inc., et al | |
| Defendants. | |

**MOTION FOR PRELIMINARY INJUNCTION**

TO THE HONORABLE COURT:

COME NOW PLAINTIFFS, JOSÉ ALBERTO VIZCARRONDO, his wife JONI T. FARIS and the conjugal partnership formed by them (hereinafter referred collectively as the "Plaintiffs"), by and through the undersigned attorneys, and respectfully state and pray as follows:

I.     **INTRODUCTION**

1.  During the last year, Mrs. Josefina Ramírez de Arellano, Mr. Andrés Ramírez de Arellano Paredes, and Mr. Paul Hopgood (hereinafter "the Individual Defendants" – distinguished from the defendant corporate entities), which together represent the majority of Telecinco Inc.'s (hereinafter "Telecinco") Board of Directors, have

conducted a sustained, systematic and continuing campaign of oppression against Plaintiff Vizcarrondo and have implemented a hostile takeover plan in an attempt to entrench themselves in full control of Telecinco. As set out in the Amended Verified Complaint lodged at docket No. 6, the Individual Defendants, amongst others: (1) have declared null and void Plaintiff Vizcarrondo's ownership of 879 shares of stock of Telecinco; (2) have forbidden and prevented Plaintiff Vizcarrondo from participating in Telecinco's stockholders' meetings and exercising his decision-making and voting rights; and (3) have failed to pay Plaintiff Vizcarrondo his corresponding dividends and/or capital distributions.

2.   Although Plaintiff Vizcarrondo has repeatedly claimed his rights as a shareholder, the Individual Defendants have continued to act as if Plaintiff Vizcarrondo was not a stockholder and a member of the Board of Directors of Telecinco. The actions of the Individual Defendants are part of an ongoing scheme to take illegal possession of his property rights and voting powers in Telecinco and to continue breaching Vizcarrondo's shareholder agreement and their fiduciary duties to Plaintiff Vizcarrondo as a stockholder and member of the Company's Board of Directors, since his designation is still current and valid. This illegal conduct and scheme of the Individual Defendants requires the intervention of this Honorable Court to prevent a manifest failure of justice.

3.   If the Individual Defendants are allowed to continue breaking the law, and the bylaws and governing documents of the defendant entities, as well as the agreements between the parties, ignoring the fact that Plaintiff Vizcarrondo is a shareholder of

Telecinco (who was until August 9, 2018 its CEO and President of the Board of Directors), they will not only cause irreparable harm to the Plaintiffs, as explained in more detail herein below, but will also substantially change the corporate governance of Telecinco in detriment of Plaintiff Vizcarrondo who is a shareholder. A preliminary injunction is therefore necessary to preserve the *status quo* and avoid irreparable harm to the Plaintiffs.

**4.** Accordingly, pursuant to Fed. R. Civ. P. 65(a), the Plaintiffs move this Honorable Court to issue a preliminary injunction in their favor, as set out below and for the grounds and reasons set out in the Amended Verified Complaint (docket No. 6), to: *(1)* order the Defendants to allow Plaintiff Vizcarrondo to fully participate in all of the stockholders' meetings of Telecinco with his voting rights; *(2)* notify Plaintiff Vizcarrondo of the scheduling of the stockholders' meetings of Telecinco with at least 10-day prior notice as required by Telecinco's bylaws; *(3)* forbid the Defendants from making payments of dividends or making money distributions to stockholders or third parties until the above-captioned case is concluded; *(4)* prohibit the Defendants from issuing new stocks or shares from Telecinco; *(5)* provide to Vizcarrondo the minutes and audio recordings from all of the shareholders and/or Board of Directors meetings from August 9, 2018 and up to the present, including all documents presented for or reviewed during those meetings, as well as any resolutions approved; *(6)* declare null and void any decisions taken in any shareholders and/or Board of Directors meetings from August 9, 2018 and up to the present; *(7)* declare null and void the $1,000,000 in dividends and/or capital

distributions payments that have been made by Telecinco excluding Plaintiff Vizcarrondo; *(8)* order the Individual Defendants and any other shareholder to return the $1,000,000 in dividends and/or capital distributions that they have distributed amongst themselves from August 9, 2018 and up to the present without paying Plaintiff Vizcarrondo's corresponding dividends;[1] and *(9)* preclude the Defendants and its agents, successors, employees, attorneys and those acting in concert with them from engaging in conduct, actions and/or practices that infringe Plaintiff Vizcarrondo's rights as shareholder of Telecinco or that reduce, depreciate or devalue Telecinco's stocks, until Plaintiff Vizcarrondo's claims for permanent injunctive relief can be heard and decided upon.

5. As the Supreme Court has noted, "in corporate control contests the stage of preliminary injunctive relief, rather than post-contest lawsuits, 'is the time when relief can be best given.'" Piper v. Chris-Craft Indus., 430 U.S. 1, 41-42 (1976) (citing Electronic Specialty Co. v. International Controls Corp., 409 F.2d 937, 947 (2d Cir. 1969). *See also* Sonesta Int'l Hotels Corp. v. Wellington Assocs., 483 F.2d 247, 250 (2d Cir. 1973) ("Erring on the side of granting the injunction becomes especially imperative in corporate control contests because 'once the [transaction] has been consummated it becomes difficult, and sometime virtually impossible, for a court to 'unscramble the eggs.''").

---

[1] **If said amount of money is not returned within fifteen (15) days, we request that the Court orders the Directors of Telecinco who approved said capital distributions to reimburse the Company for said illegal payment.**

## II.   **RELEVANT FACTS**

**6.** In 2005, Mr. José Alberto Vizcarrondo (hereinafter "Vizcarrondo") assumed the Vice-Presidency of Telecinco and its related corporate affiliates. A few years later, Vizcarrondo was named President. Amended Verified Complaint at ¶ 16.

**7.** In February 2011, Telecinco and Vizcarrondo entered into an Employment Agreement (the "Employment Agreement"). As part of such employment agreement with Telecinco, Vizcarrondo was also named the President of all codefendant companies Telecinco, Inc., ARA International, LLC, ERA International Corporation, Hacienda Tres Hermanos, Inc., and Hacienda Igualdad, Inc. *Id*. at ¶ 24.

**8.** Vizcarrondo provided services for all of such entities mentioned in the preceding paragraph and acted as Chief Executive Officer (CEO)[2] of each corporation.   He was also the President of the Board of Directors of each corporation. *Id*. at ¶ 25.

**9.** As part of Vizcarrondo's "Employment Benefits and Expenses" the Employment Agreement provides that "[a]t the discretion of the Company's Board of Directors, Vizcarrondo will be eligible to receive options under the stock option plan".   *Id*. at ¶ 51.

**10.** On July 1st, 2013, Telecinco approved a Senior Executive Stock Option Plan (the "Plan") wherein Telecinco set out the terms and conditions applicable to the

---

[2]   The Employment Agreement indicates that Vizcarrondo was the "Chief Operating Officer" of all such entities, although he really was the Chief Executive Officer, since there was no officer with a higher rank than Vizcarrondo in any of such corporations or the board of directors of such corporations.

issuance of stock options to Senior Executives of Telecinco. The Plan provides, amongst other things, that once the option rights are granted, the Plan shall not be modified in a way that adversely impacts grantee, without such grantee's consent. Additionally, the Plan provides that "[u]pon vesting and exercising of the Common Stock share certificates... the Recipient shall have all the rights of a stockholder of 'The Corporation' with respect to the shares of Common Stock." *Id*. at ¶ 52.

11. On November 12, 2013, Telecinco issued a Stock Option Certificate in which it granted Vizcarrondo the option to purchase 2,500 shares of Telecinco at a strike price of $934.00 per share. The Stock Option Certificate states that the options are "Fully vested as of the date of Grant". *Id*. at ¶ 53.

12. During the month of January 2018, Vizcarrondo exercised his option rights over 3 shares of stock of Telecinco paying $2,802 from his own funds and, on February 1, 2018, Telecinco issued the certificate of stock number 44 wherein it recognized Vizcarrondo as the lawful owner of three shares of its stock. *Id*. at ¶ 55.

13. On July 11, 2018, Vizcarrondo exercised his option to purchase 876 additional shares of stock in Telecinco in a cashless manner. With his request, Vizcarrondo included the computations for the cashless exercise which were validated by Telecinco's outside auditors. *Id*. at ¶ 57.

14. The following day, July 12, 2018, Mrs. Josefina Ramírez de Arellano (JRA) and Mr. Andrés Ramírez de Arellano Paredes (ARAP) sent out a communication to the secretary of the corporation ordering her to abstain from taking any action regarding

Vizcarrondo's stock option exercise and calling for an extraordinary meeting of the Board for July 16, 2018. *Id*. at ¶ 58.

15. Almost two months after Vizcarrondo's exercise of his options for 876 shares, and despite Vizcarrondo's repeated requests, Telecinco and its secretary, JRA, without any legal basis, refused to issue the corresponding stock certificates. This, coupled with the facts stated in the Amended Verified Complaint (all of which are incorporated by reference to this motion), constituted a constructive discharge which forced Vizcarrondo out of his job on August 9, 2018. *Id*. at ¶ 61.

16. Despite the foregoing, and after recognizing Vizcarrondo's ownership of the three shares of stock for which a certificate was issued, on August 13, 2018, ARAP sent a communication to all shareholders, including Vizcarrondo, informing them that he had been named interim President. *Id*. at ¶ 62.

17. Additionally, on September 7, 2018, also recognizing Vizcarrondo as a shareholder, ARAP invited Vizcarrondo to an Extraordinary Shareholder's meeting to be held on September 11, 2018. *Id*. at ¶ 63.

18. Nonetheless, the same day of the stockholder's meeting, Vizcarrondo received a letter from ARAP stating that, on a Board of Directors meeting held the day before, they had decided not to honor the stock option rights conferred and exercised by Vizcarrondo. Thus, the Board would not recognize Vizcarrondo as a shareholder of the 876 shares exercised on July 11, 2018. Additionally, per the communication, Defendants decided to take the law into their own hands and unilaterally declared

null and void Vizcarrondo's ownership of the three shares that Vizcarrondo had paid with cash and for which a stock certificate had been issued. *Id*. at ¶ 64.

19. Vizcarrondo attempted to participate in the September 11, 2018 Stockholders meeting but was denied entry to the meeting. *Id*. at ¶ 66.

20. In addition, after Vizcarrondo's wrongful and illegal discharge from his employment, Telecinco has distributed dividends and made monetary distributions to all of its stockholders, except for Vizcarrondo.  *Id*. at ¶ 69.

21. Telecinco and the remaining co-defendants not only have conspired to deprive Vizcarrondo from dividends and/or distributions that he may also be entitled to, but have also conspired to deprive Vizcarrondo of his stocks, his stock options, and his rights (including the decision-making and voting rights) concerning the defendant companies. *Id*. at ¶ 70.

22. Defendants' poor and inexperienced administration of the defendant companies, as well as their continued and blatantly exhibited bad faith and retaliatory animus against Plaintiff Vizcarrondo, puts at serious risk Vizcarrondo's interests and rights in Telecinco in a manner that will cause the Plaintiffs irreparable harm.  *Id*. at ¶ 71.

## III.    PRELIMINARY INJUNCTION STANDARD

23. A court has **broad discretionary power** to grant preliminary injunctive relief so as to preserve its ability to render a meaningful decision on the merits.  *See* Francisco Sanchez v. Esso Standard Oil Co., 572 F.3d 1, 19 (1st Cir. 2009) ("[T]he purpose of a preliminary injunction is to preserve the *status quo* before the merits have been resolved.").

24. "To grant a preliminary injunction, a district court must find the following four elements satisfied: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) a balance of equities in the plaintiff's favor, and (4) service of the public interest." Arborjet, Inc. v. Rainbow Treecare Scientific Advancements, Inc., 794 F.3d 168, 171 (1st Cir.2015) (citing Voice of the Arab world, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011); and Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).

25. The moving party bears the burden of proof for each of these four factors. Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003).

26. While all four factors must be weighed, the moving party's likelihood of success on the merits is "the touchstone of the preliminary injunction inquiry." Philip Morris, Inc. v. Harshbarger, 159 F.3d 670, 674 (1st Cir.1998). "[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir.2002)).

27. Moreover, "of the four factors, the probability of success component in the past has been regarded by us as critical in determining the propriety of injunctive relief." Lancor v. Lebanon Housing Authority, 760 F.2d 361, 362 (1st Cir.1985). Hence, the factor of probability of prevailing constitutes the principal criteria to overpass. Le Beau v. Spirito, 703 F.2d 639, 645 (1st Cir.1983).

## IV.    DISCUSSION

### a.  LIKELIHOOD OF SUCCESS ON THE MERITS

28. It has long been recognized that the directors and officials of a corporate entity have a fiduciary relationship as to the corporation itself and as to its shareholders. *See* Rivera Sanfeliz et al. v. Jta. Dir. FirstBank, 193 D.P.R. 38 (2015); and Epstein v. F. & F. Mortgage Corp., 106 D.P.R. 211 (1977).

29. Said fiduciary duty is established in Article 2.03 of the General Corporations Act of Puerto Rico, P.R. Laws Ann. tit. 14, § 3523, which provides that "[t]he authority and the powers conferred upon every corporation organized under the laws of the Commonwealth of Puerto Rico or upon the officers or directors thereof, by law or in the certificate of incorporation or instrument with equal force and validity, or in the corporate bylaws, shall be enjoyed and must be exercised by the corporation or by the officers or directors, as the case may be, in benefit of the stockholders of the corporation and for the prudent conduct of its businesses and affairs, as well as for the furtherance of its objectives and purposes."

30. In the case at hand, the Individual Defendants have breached their fiduciary duties as to Telecinco and as to Plaintiff Vizcarrondo as stockholder of Telecinco, and are acting solely with their own personal, private, and individual interests in mind in order to take full control of Telecinco's Board of Directors, deprive Plaintiff Vizcarrondo from his lawful ownership of 879 shares of Telecinco, deprive Plaintiff Vizcarrondo from his right to participate and vote during the stockholders'

meetings, and to deprive Plaintiff Vizcarrondo from his right to receive dividends and money distributions.

31. Article 5.01(c) of the General Corporations Act of Puerto Rico, P.R. Laws Ann. tit. 14, § 3581(c), provides that "[t]he holders of preferred or special stock of any class or series shall be entitled to dividends at the rate and on the conditions and terms which shall be stated in the certificate of incorporation or in the resolution or resolutions providing for the issue of such stock and adopted by the board of directors pursuant to the provisions of this subtitle. Such dividends shall be paid with preference over or in relation to the dividends payable on any other class or classes of stock, and shall be cumulative or noncumulative as shall be so stated. When dividends have been paid on preferred or special shares, if any, in accordance with the preferences to which they are entitled, or when such dividends have been declared and set aside for payment, then dividends may be paid on the remaining classes or series of stock from the remaining assets of the corporation which are available for the payment of dividends, pursuant to the provisions of § 3595 of this title."

32. Plaintiff Vizcarrondo, as the lawful owner of 879 stocks of Telecinco, has a statutory right to receive dividends from money distributions that are made by the Board of Directors to stockholders, and Telecinco has distributed dividends to all of its stockholders, except for Plaintiff Vizcarrondo. From the dividends and payments recently made, Telecinco intentionally excluded Plaintiff Vizcarrondo **who is not only a stockholder but also is still a member of Telecinco's Board of Directors**,

as part of the vendetta of the Individual Defendants against him. Telecinco has also excluded him from participating in Board of Directors meetings, and from participating in the decision-making process concerning the affairs and matters of the defendant entities.

33. Moreover, Article 7.02(a) of the General Corporations Act of Puerto Rico, P.R. Laws Ann. tit. 14, § 3642(a), provides that "[u]nless otherwise provided in the certificate of incorporation and subject to § 3643 of this title, each stockholder shall be entitled to one (1) vote for each share of capital stock held by such stockholder. If the certificate of incorporation provides for more or less than one (1) vote for any share, on any matter, every reference in this subtitle to a majority or other proportion of stock, voting stock or shares shall refer to such majority or other proportion of the votes of such stock, voting stock or shares."

34. Accordingly, Plaintiff Vizcarrondo has a statutory right to participate and vote in the stockholders' meetings of Telecinco and to receive dividends as determined by the Board of Directors legally and validly constituted and assesmbled. The Defendants, however, have unlawfully interfered with Plaintiff Vizcarrondo's rights as shareholder by not allowing him to participate and vote, and by not paying him his corresponding dividends.

35. Therefore, Plaintiff Vizcarrondo has demonstrated a strong likelihood of success on the merits since he has a statutory right to both, to receive dividend payments and to participate in the stockholders' meetings.

b. **IRREPARABLE HARM TO PLAINTIFFS ABSENT AN INJUNCTION**

36. "To demonstrate the prospect of future harm . . . a plaintiff must show more than

   that she has been injured. Past exposure to illegal conduct does not in itself show a

   present case or controversy regarding injunctive relief ... if unaccompanied by any

   continuing, present adverse effects." Gonzalez-Droz v. Gonzalez-Colon, 573 F.3d

   75, 79 (1st Cir. 2009) (quoting Steir v. Girl Scouts of the USA, 383 F.3d 7, 16 (1st

   Cir.2004)). Plaintiff bears the burden of demonstrating that a denial of the requested

   preliminary injunctive relief will likely cause it irreparable harm. *Id*. (quoting

   Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st

   Cir.2004)). This irreparable harm must be likely, not merely speculative. *See* Winter

   v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008)

37. In the above-captioned case, Plaintiff Vizcarrondo will be irreparably harmed if an

   injunction is not issued. Specifically, Plaintiff Vizcarrondo will be harmed by the

   actions and omissions of Telecinco and the Individual Defendants since his

   exclusion from the stockholders' meetings eliminates his decision-making powers

   and voting rights, renders useless his position of Director, dilutes Plaintiff

   Vizcarrondo's equity interest in Telecinco, and allows Defendants to continue to act

   in full breach of the governing documents of the entity and without regard to their

   fiduciary duties.

38. Defendants' refusal to allow Plaintiff Vizcarrondo to participate in the stockholders'

   and Board of Directors' meetings has put Defendants in a position to oppress

   Plaintiffs and render completely worthless their investments in Telecinco, which

include years of service by Vizcarrondo and monetary contributions to Telecinco's capital. With no dissenting view on the Board of Directors, since the Individual Defendants have strategically managed to remove all dissenting members from the Board, the Defendants are in a position to severely, permanently and irreparably dilute Plaintiff Vizcarrondo's equity interest in Telecinco while paying dividends and monetary distributions with the exclusion of Vizcarrondo.

39. Moreover, the Defendants have shown extreme disregard of the law and distributed approximately $1,000,000 in dividends and/or in capital distributions to shareholders with the exception of Plaintiff Vizcarrondo. Telecinco has significant cash reserves which the Individual Defendants can easily distribute as dividends or capital distributions to the exclusion of Vizcarrondo causing severe and irreparable loss.

40. Furthermore, Defendants could issue stock, options, and permissions at their exclusive and full discretion, and to people of their choosing, making Plaintiff Vizcarrondo's original investment a fraction of its original worth. This harm cannot be easily calculated, nor could it be remedied. While it may be possible to calculate the difference in value between Plaintiff Vizcarrondo's equity now and some value in the future, the value of Plaintiff Vizcarrondo's loss of his decision-making powers and voting rights in connection with the management of Telecinco cannot be appraised. Furthermore, if Defendants continue making decisions to adversely affect Plaintiff Vizcarrondo, and were to issue stocks or other equity interests, the Court could be required to consider the reversion and cancelation of countless

14

transactions with potentially innocent third parties and force them to sell back the equity in order to return Telecinco to a *status quo*. This would present an undesirable, detrimental, and difficult to manage task.

41. Defendants' decision to deny Plaintiff Vizcarrondo his right to participate and to vote in the stockholders' meetings constitutes irreparable harm.  *See*, e.g., AHI Metnall, L.P. by AHI Kansas, Inc. v. J.C. Nichols Co., 891 F. Supp. 1352, 1359 (W.D. Mo. 1995) ("Courts have consistently found that corporate management subjects shareholders to irreparable harm by denying them the right to vote their shares . . . .") (citation and internal quotation marks omitted); Packer v. Yampol, No. C.A. 8432, 1986 WL 4748, at *11 (Del. Ch. Apr. 18, 1986) ("The harm threatened here is to the corporate electoral process, a process which carries with it the right of shareholders to a meaningful exercise of their voting franchise and to a fair proxy contest with an informed electorate."). *See also* Micro Signal Research, Inc. v. Otus, 417 F.3d 28 (1st Cir. 2005) (District Courts may grant a preliminary injunction in a breach of contract case when there is a strong indication that defendant would dissipate or conceal assets).

42. Moreover, the Defendants have refused to issue Plaintiff Vizcarrondo's stock certificates after Vizcarrondo exercised his option to purchase 876 shares of stock in Telecinco in a cashless manner (as expressly allowed by the applicable and governing documents), and illegally declared null and void Vizcarrondo's ownership of the three shares that were paid in cash by him and for which a stock certificate had been issued. Therefore, Vizcarrondo has his hands tied and has been

left without and illegally deprived of his stocks, and also divested of his right to participate and vote in Telecinco's stockholders' meetings.

43. Defendants' acts have caused, are causing, and unequivocally will continue to cause Plaintiff Vizcarrondo to suffer irreparable harm unless this Honorable Court provides an injunctive relief to redress his grievances and rectify these injustices.

c. **BALANCE OF EQUITIES**

44. When deciding whether or not to issue an injunction, the Court must compare the burden on Plaintiffs if an injunction is not issued to the burden on Defendant if an injunction is issued. *See* 11A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.2. When this comparison is made, this factor clearly favors the Plaintiffs. Defendants will not be significantly burdened if the Court issues an injunction since they will be allowed to continue conducting its business, except that the Defendants must: *(1)* allow Plaintiff Vizcarrondo to fully participate in all of the stockholders' meetings of Telecinco with his voting rights; *(2)* with at least 10-day advanced notice, notify Plaintiff Vizcarrondo of the scheduling of the stockholders' meetings of Telecinco; *(3)* not make payments of dividends or money distributions to stockholders or third parties until the above-captioned case is concluded; *(4)* not issue new stocks or shares from Telecinco; *(5)* provide to Vizcarrondo the minutes and audio recordings from all of the shareholders and/or Board of Directors meetings from August 9, 2018 and up to the present, including all documents presented for or reviewed during those meetings, as well as any resolutions approved; *(6)* declare null and void any decisions taken

16

in any shareholders and/or Board of Directors meetings from August 9, 2018 and up to the present; *(7)* declare null and void the $1,000,000 in dividends and/or capital distributions payments that have been made by Telecinco excluding Plaintiff Vizcarrondo; *(8)* order the Individual Defendants and any other shareholder to return the $1,000,000 in dividends and/or capital distributions that they have distributed amongst themselves from August 9, 2018 and up to the present without paying Plaintiff Vizcarrondo's corresponding dividends; and *(9)* not engage in conduct, actions and/or practices that infringe Plaintiff Vizcarrondo's rights as shareholder of Telecinco or that reduce, depreciate or devalue Telecinco's stocks, until Plaintiff Vizcarrondo's claims for permanent injunctive relief can be heard and decided upon.

d. **PUBLIC INTEREST**

45. The balance of the public interest in this case weighs in favor of Plaintiffs. The final factor, the public interest, also weighs in favor of granting the injunction. "The public interest that is referred to in the test for a preliminary injunction means the public's interest in the issuance of *the injunction itself*." Braintree Labs., Inc. v. Citigroup Glob. Markets Inc., 622 F.3d 36, 45 n.8 (1st Cir. 2010).

*46.* As an initial matter, issuing the injunction would permit Plaintiffs to exercise their property rights, and "Puerto Rico has a strong public interest in preserving the rights of its citizens against the misappropriation and misuse of their property." Am. Health, Inc. v. Chevere, No. CIV 12-1678 PG, 2013 WL 5297295, at *7 (D.P.R. Sept. 19, 2013). Moreover, issuing "the preliminary injunction would hold"

17

Telecinco "to the terms of the bargain" it entered into with Vizcarrondo, and "[e]nforcement of contractual duties is in the public interest." *See* <u>Total Petroleum v. Claudio Quintana</u>, No. CIV 16-2979 (D.P.R. July 12, 2017) (quoting <u>Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.</u>, 511 F.3d 535, 551 (6th Cir. 2007)); *see also* P.R. Laws Ann. tit. 31, § 3471 ("If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed.").

47. Furthermore, by preventing Defendants from prohibiting Plaintiff Vizcarrondo to participate and vote in Telecinco's stockholders' and Board of Directors' meetings, the Court will ensure that the Defendants abide by their fiduciary duties. Based on the fact that the public interest favors enforcing fiduciary duties, and the fact that the General Corporations Act of Puerto Rico specifically provides for stockholders' voting rights and for the payment of dividends, the public interest weighs in favor of issuing the requested injunction under the circumstances of this case.

## V.   <u>POSTING OF BOND NOT NECESSARY</u>

48. Under Rule 65(c), a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). The purpose of such a bond is to ensure that the enjoined party may readily be compensated for the costs incurred as a result of the injunction should it later be determined that it was wrongfully enjoined. *See* <u>Global NAPs, Inc. v. Verizon New England, Inc.</u>, 489 F.3d 13, 20-21 (1st Cir. 2007).

**49.** In light of the fact that Plaintiffs have a substantial likelihood of succeeding on the merits and that Defendants would not be significantly burdened by the injunction, a bond is not necessary in this case. *See* Crowley v. Local No. 82, Furniture & Piano Moving, 679 F.2d 978, 1000 (1st Cir. 1982) rev'd on other grounds, 467 U.S. 526, (1984) (First Circuit recognition that district court has discretion to waive security bond requirement in "suits to enforce important federal rights or public interests.").

**50.** In the alternative, because a preliminary injunction presents no monetary risks to the Defendants, Plaintiffs request that bond be set at $1.00. Fed. R. Civ. P. 65(c).

## VI.   **CONCLUSION**

**51.** In view of the above, after considering the factors for the issuance of a preliminary injunction, it is clear that Plaintiffs are entitled to injunctive relief given that: Plaintiff Vizcarrondo has shown a strong likelihood of success on the merits and a sufficient threat of irreparable harm if an injunction is not issued; Defendants will not be substantially burdened if the requested injunction is issued, and that the public interest will be served. Accordingly, Plaintiff Vizcarrondo's Motion for a Preliminary Injunction should be granted. In compliance with Local Rule 65, Plaintiffs hereby attach, as **Exhibit I**, a proposed order granting their Motion for a Preliminary Injunction.

WHEREFORE, Plaintiffs respectfully request the Court to issue a preliminary injunction ordering the Defendants to: *(1)* allow Plaintiff Vizcarrondo to fully participate in all of the stockholders' meetings of Telecinco with his voting rights; *(2)* with at least 10-day advanced notice, notify Plaintiff Vizcarrondo of the scheduling of the stockholders'

meetings of Telecinco; *(3)* avoid making payments of dividends or making money distributions to stockholders or third parties until the above-captioned case is concluded; *(4)* avoid issuing new stocks or shares from Telecinco; *(5)* provide to Vizcarrondo the minutes and audio recordings from all of the shareholders and/or Board of Directors meetings from August 9, 2018 and up to the present, including all documents presented for or reviewed during those meetings, as well as any resolutions approved; *(6)* declare null and void any decisions taken in any shareholders and/or Board of Directors meetings from August 9, 2018 and up to the present; *(7)* declare null and void the $1,000,000 in dividends and/or capital distributions payments that have been made by Telecinco excluding Plaintiff Vizcarrondo; *(8)* order the Individual Defendants and any other shareholder to return the $1,000,000 in dividends and/or capital distributions that they have distributed amongst themselves from August 9, 2018 and up to the present without paying Plaintiff Vizcarrondo's corresponding dividends;[3] and *(9)* avoid engaging in conduct, actions and/or practices that infringe Plaintiff Vizcarrondo's rights as shareholder of Telecinco or that reduce, depreciate or devalue Telecinco's stocks, until Plaintiff Vizcarrondo's claims for permanent injunctive relief can be heard and decided upon.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 29th day of October, 2018.

---

[3] **If said amount of money is not returned within fifteen (15) days, we request that the Court orders the Directors of Telecinco who approved said capital distributions to reimburse the Company for said illegal payment.**

WE HEREBY CERTIFY that on this day, a true and exact copy of this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.



| P.O. Box 195343 | Citibank Towers, Suite 500 |
|---|---|
| San Juan, Puerto Rico | 252 Ponce de León Avenue |
| 00919-5343 | San Juan, Puerto Rico 00918 |

Tel. (787) 758-1400
Fax: (787) 758-1414
Cel. (787) 460-3456

www.laborcounsels.com
paula@laborcounsels.com
pico@laborcounsels.com

S/ CARLOS R. PAULA
Attorney for Plaintiffs
USDCPR # 212009

S/ JAIME E. PICÓ-RODRÍGUEZ
Attorney for Plaintiffs
USDCPR # 228113